NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ERIC LEBEAU, et al., *Plaintiffs/Appellants*,

*v.*

MICHAEL D. GUGEL, *Defendant/Appellee*.

No. 1 CA-CV 24-0225

FILED 03-27-2025

Appeal from the Superior Court in Maricopa County
No. CV2020-013868
The Honorable Joan M. Sinclair, Judge

**AFFIRMED**

COUNSEL

Ahwatukee Legal Office, P.C., Phoenix
By David L. Abney
*Co-Counsel for Plaintiffs/Appellants*

Phillips Law Group, P.C., Phoenix
By Nasser U. Abujbarah, Timothy A. LeDuc
*Co-Counsel for Plaintiffs/Appellants*

Hill, Hall & DeCiancio, PLC, Phoenix
By Thomas C. Hall, Ellen E. Stark, Christopher Robbins
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Vice Chief Judge Randall M. Howe and Judge Andrew M. Jacobs joined.

---

**B A I L E Y**, Judge:

**¶1**        Plaintiffs Eric and Stacey LeBeau (collectively, "the LeBeaus") appeal a judgment affirming a jury's verdict in favor of Defendant, Michael Gugel, arguing the verdict was contrary to the law and evidence and the superior court erred in denying their pretrial motion in limine.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**        In October 2019, Gugel rear-ended a car driven by Eric LeBeau.  Eric's wife, Stacey, and daughter were also in the car; all three were wearing seatbelts.  The LeBeaus were able to get out of their car unassisted, and when Gugel asked Eric if he was okay, he replied that he was.  The LeBeaus called 911, and police arrived on the scene about twenty minutes later.  Afterward, the LeBeaus and Gugel were each able to drive home.

**¶3**        That evening, the LeBeaus were "sore" and experienced "stiffness," and by the next day, they began feeling pain.  As a result, they began seeing a chiropractor and a pain management doctor.  The LeBeaus were referred for treatment for headaches and lower back pain, and underwent pain injections, MRI scans, and physical therapy.

**¶4**        One year after the accident, the LeBeaus filed suit against Gugel, alleging negligence and negligence per se.[1]  In his answer and throughout the underlying action, Gugel admitted he acted negligently, but denied the LeBeaus were injured and contested their damage claims. Before trial, the LeBeaus moved in limine to preclude evidence that their attorney directed their medical care or that "Plaintiffs' physicians performed unnecessary, unwarranted and non-indicated, medical

---

[1] The LeBeaus' daughter was also named as a plaintiff.  But on the first day of trial, the superior court granted the LeBeaus' motion to dismiss their daughter's claims with prejudice.

procedures" ("medical build-up"), claiming the evidence was inadmissible under Arizona Rules of Evidence 401, 402, and 403. Gugel opposed the motion, and two days later the superior court denied the motion. After a six-day trial, a jury unanimously found for Gugel.

**¶5**　　　　The LeBeaus timely appealed the resulting judgment, and we have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## DISCUSSION

**¶6**　　　　The LeBeaus contend the jury's verdict was "contrary to the law and the facts" and that the superior court erred by denying their motion in limine to preclude any reference to a medical build-up argument.

I.　　　　The LeBeaus waived their insufficient evidence claim.

**¶7**　　　　The LeBeaus contend the jury's verdict was contrary to the law and facts because Gugel "repeatedly admitted he was at fault—and there was strong evidence that [the LeBeaus] had [] suffered injury." Gugel responds that the LeBeaus simply contend that insufficient evidence supported the jury's verdict and argues the LeBeaus waived this challenge because they did not move for a new trial as required by A.R.S. § 12-2102(C). We agree.

**¶8**　　　　Section 12-2102(C) states, "On an appeal from a final judgment the supreme court shall not consider the sufficiency of the evidence to sustain the verdict or judgment in an action tried before a jury unless a motion for a new trial was made." We lack authority under A.R.S. § 12-2102(C) to consider the sufficiency of the evidence to sustain the jury verdict unless a motion for new trial was made in the superior court. *See Marquette Venture Partners II, L.P. v. Leonesio*, 227 Ariz. 179, 182, ¶ 7 (App. 2011).

**¶9**　　　　Here, the LeBeaus made no post-verdict motion for new trial or "any other post-verdict motions for judgment as a matter of law." *Id.* at ¶ 8. We lack authority to consider the LeBeaus' argument.

II.　　　　The superior court did not err by denying the LeBeaus' motion in limine.

**¶10**　　　　The LeBeaus argue the superior court abused its discretion by allowing Gugel to elicit medical build-up testimony over their pre-trial objections under Arizona Rule of Evidence 403. We will not reverse the

superior court's ruling on the admissibility of evidence absent an abuse of discretion. *Girouard v. Skyline Steel, Inc.*, 215 Ariz. 126, 129, ¶ 10 (App. 2007).

¶11 "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Ariz. R. Evid. 401. Although relevant evidence is generally admissible, a "court may exclude relevant evidence if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Ariz. R. Evid. 403. "A proper Rule 403 balancing of probative value and prejudicial effect begins with a proper assessment of the 'probative value of the evidence with respect to the issue for which it is offered.'" *Shotwell v. Donahoe*, 207 Ariz. 287, 296, ¶ 34 (2004) (quoting *State v. Gibson*, 202 Ariz. 321, 324, ¶ 17 (2002)). Then, the probative value of the evidence is balanced against its potential prejudice to the opposing party. *See id.* If the issue is undisputed or other evidence that is less prejudicial but equally probative is available, then it is more likely the potential prejudice caused by introducing such evidence substantially outweighs its probative value. *Id.*

¶12 At trial, Eric LeBeau testified that his chiropractor referred him "to do an MRI and [sic]—for pain management." But when his attorney asked him, "How did you go about finding a pain management doctor?" Eric replied, "Through my attorneys." Eric also provided conflicting testimony about who referred him to physical therapy. He testified, "I went off . . . the doctor's advice, and then my attorney." But when his attorney asked, "Are you sure it was your attorney?" Eric stated, "They told me which office to go to or where to go, [o]r initially, it was the Goodyear chiropractor, I think it was that referred. Or no, it was Dr. Shah, actually."

¶13 During cross-examination, Gugel raised Eric's deposition testimony that he was referred to the different doctors and treatments by his attorneys. Eric responded that his deposition testimony was incorrect at the time but acknowledged he promised to tell the truth, and he knew his deposition statements "could be used later if [he] said something different."

¶14 Stacey LeBeau also testified that her chiropractor referred her for various treatments and to different doctors. But, unlike her husband, Stacey denied that her attorneys recommended that she engage a certain doctor or obtain a specific treatment.

¶15        The LeBeaus contend that "it just does not matter how a client made it to a particular health care provider" and how they were referred to their medical providers is "irrelevant to any issue in the case." Gugel counters that how the LeBeaus came to receive the medical treatment from their providers is relevant to assess the credibility of the LeBeaus and their witnesses, to demonstrate their providers' potential biases and motives for rendering treatment, and to determine whether their treatment was reasonable and necessary.

¶16        We agree that the referral evidence is relevant to determining whether the LeBeaus and their witnesses were credible and whether the LeBeaus' medical providers were biased or prejudiced. "Generally, litigants are entitled to present evidence that tends to show bias or prejudice on the part of witnesses, including those who testify as experts." *Am. Fam. Mut. Ins. Co. v. Grant*, 222 Ariz. 507, 511, ¶ 13 (App. 2009). And the superior court "regularly instruct[s] jurors to assess witnesses' credibility and to consider any 'motive, bias, or prejudice.'" *Id.* (quoting Rev. Ariz. Jury Instr. (Civil), at 7 (4th ed. 2005)).

¶17        Here, the superior court instructed the jury, when evaluating testimony, to consider "whether the witness has any motive, bias, or prejudice [and] whether the witness [i]s contradicted by anything said or written before trial or by [any] other evidence." The jury was also instructed to "decide the credibility and weight to be given to any evidence presented in the case," which included expert and witness testimony. We presume the jury followed the court's instructions. *See Ryan v. S.F. Peaks Trucking Co., Inc.*, 228 Ariz. 42, 46, ¶ 12 n.5 (App. 2011).

¶18        The LeBeaus' medical providers' alleged bias is also relevant to determine whether the treatment the LeBeaus received was reasonable and necessary. And our prior decisions have consistently established that an expert's relationship with the hiring party and their counsel is a proper subject of cross-examination. *See Grant*, 222 Ariz. at 512, ¶ 15. Moreover, the LeBeaus made the medical referrals an issue when they testified during direct examination. *Elia v. Pifer*, 194 Ariz. 74, 79, ¶ 18 (App. 1998) ("[A] party will not be allowed to complain of the introduction of irrelevant evidence where he has asserted a position that makes such evidence relevant.").

¶19        Nonetheless, the LeBeaus assert the evidence is unduly prejudicial because it could confuse the issues and mislead the jury. But those risks do not outweigh the evidence's appropriate function of challenging the LeBeaus' credibility and tending to demonstrate the

potential biases and motivations of their medical providers. And the potential for prejudice was limited, as Gugel referred to the alleged medical build-up only once during closing argument by highlighting that Stacey did not have any plans for future treatment when she was deposed, but after her attorneys sent her to the doctor, she developed a plan for future treatment. Therefore, the superior court did not abuse its discretion in denying the LeBeaus' motion in limine.

¶20 The LeBeaus also argue that any evidence or argument that their attorneys referred them to their medical providers is protected by attorney-client privilege. "As a general rule, appellate courts 'will not consider issues not raised in the trial court.'" *City of Tucson v. Tanno*, 245 Ariz. 488, 494, ¶ 22 (App. 2018) (quoting *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 477, 479 (1986)); *see also Harris v. Cochise Health Sys.*, 215 Ariz. 344, 350, ¶ 17 (App. 2007). Here, the LeBeaus raised this argument for the first time in their opening brief. Accordingly, they have waived the issue, and we decline to address it on appeal.

¶21 The LeBeaus request costs on appeal. We deny the LeBeaus' request because they are not the prevailing party. As the prevailing party, Gugel is entitled to his taxable costs upon compliance with Rule 21, ARCAP.

## CONCLUSION

¶22 We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR